UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| STEPHEN GRANT and <br> MARY GRANT <br><br> *Plaintiffs* <br><br> vs. <br><br> EVEREST REINSURANCE, <br> HEALTH PLAN INTERMEDIARIES <br> HOLDINGS, LLC D/B/A HEALTH <br> INSURANCE INNOVATIONS, <br> ALLIED NATIONAL, INC., and <br> DAVID BROMBERG <br><br> *Defendants* | § § § § § § § § § § § § § § § § § | 5:19-CV-00232-FB-ESC |

**PLAINTIFFS' SECOND AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs, STEPHEN GRANT and MARY GRANT, file this second amended complaint complaining of Defendants, Everest Reinsurance, Health Plan Intermediaries Holdings, LLC d/b/a Health Insurance Innovations, Allied National, Inc., and David Bromberg in which Plaintiffs are seeking monetary relief of over $1,000,000. In support of this complaint, Plaintiffs would show this honorable court as follows:

**I. Parties, Venue, and Discovery Level**

1. Plaintiffs, Stephen and Mary Grant, are Texas citizens domiciled in Bexar County, Texas.

2. Defendant, Everest Reinsurance Company (hereinafter "Everest"), is a Delaware Company doing business in Texas that has already answered and appeared in this case.

3. Defendant, Health Plan Intermediaries Holdings, LLC d/b/a Health Insurance Innovations (hereinafter "HPI"), is a Florida company doing business in Texas has answered and appeared in this case.

4. Defendant, Allied National, Inc. (hereinafter "Allied"), is a Missouri company doing business in Texas that can be served with process by serving the Commissioner of Insurance at 333 Guadalupe St., Austin, Texas 78701. Allied's mailing address is P.O. Box 29186, Shawnee Mission, Kansas 66201-9186.

5. Defendant, David Howard Bromberg, is a Florida citizen who can be served at his place of business, 2200 W. Commercial Blvd., Ste 309, Ft Lauderdale, Florida 33309-3064

6. The venue of this case is proper in the Western District of Texas under 28 U.S.C. § § 1332(a); Sections 15.002 and 15.032 of the Texas Civil Practices and Remedies Code; and Section 17.56 of the Deceptive Trade Practices-Consumer Protection Act (hereafter the "DTPA").

## II. Conditions Precedent

7. All conditions precedent to recovery have occurred or been performed.

## III. Facts of the Case

8. HPI operates a web based platform to connect prospect clients or insureds with insurance agents and a variety of insurance carriers, with which it has specialized relationships. When a client uses the program, HPI assigns and refers the prospective client to an individual insurance agent in order to apply for and obtain coverage. HPI represents to the insureds that these agents are licensed and capable of handling the insured's needs.

9.  HPI functions as an agent of the insurance carriers, managing the billing of the insurance policies for carriers, including Everest. This allows insureds to pay their premiums; place or cancel insurance policies; and view and download insurance documents from their carrier, Everest through HPI's services.

10. In 2016, Plaintiffs sought to purchase medical insurance for their family. In order to do so, Plaintiffs used the services of HPI to find an insurance agent and an insurance carrier.

11. Through the platform, HPI referred the Plaintiffs to agent David Bromberg.

12. On December 15, 2016, Plaintiffs purchased medical insurance to take effect on January 1, 2017 from Everest (Certificate No. EVT0157220) to cover their family's health care needs.

13. Mrs. Grant applied for and placed this policy with Everest over the phone through agent, David Bromberg, using the HPI platform. In order to apply for the policy, Bromberg asked multiple questions to Mrs. Grant from the Group Short Term Medical Plan Insurance Enrollment Form in order for Bromberg to fill out the application and to determine Plaintiffs' eligibility to obtain insurance.

14. During the questioning, Mrs. Grant was asked the following question by Bromberg:

**Question No. 4:**

"Within the last 5 years has any applicant been diagnosed with, received treatment, abnormal test results, medication, consultation for, or had symptoms of: Insulin or medication dependent diabetes except gestational (diabetes does not apply to residents of DC), stroke, transient ischemic attack (TIA), cancer or tumor except basal cell skin cancer, Crohn's disease, ulcerative colitis, rheumatoid arthritis, systemic lupus, chronic obstructive pulmonary disease (COPD), emphysema, cystic fibrosis, hepatitis C, multiple sclerosis, muscular dystrophy, alcohol or drug abuse, bipolar disorder or schizophrenia; hospitalization for mental disorder, an eating disorder; or any diseases or disorders of the following: liver, kidney,

blood, pancreas, lung, brain, heart or circulatory including heart attack or catheterization?"

15. At that time, Mrs. Grant expressly informed Bromberg that her husband, Stephen Grant, had previously been treated for a heart condition that was not indicated in the first portion of the question, but was never hospitalized as questioned in the second portion.

16. Bromberg represented to Mrs. Grant that the information she provided did not meet the question criteria for a "yes" reply to the question. Relying upon Bromberg's advice, training, and representations, Mrs. Grant answered "no" to question 4.

17. Mrs. Grant did not physically have the enrollment form in front of her to properly review and interpret the questions as they were being asked. As a result, Mrs. Grant further relied on Bromberg for guidance in responding to these questions. When question no. 4 was read, Mrs. Grant interpreted it as a two part question. Bromberg also interpreted the question in the same manner, as a two part question, and agreed the correct response was "no."

18. At the conclusion of the phone call, the insurance with Everest was placed.

19. On May 2, 2017, Mr. Grant was rushed to the emergency room, which resulted in treatments for Cardiac Arrhythmia. These claims were submitted to Everest's third party administrator, Allied, for payment as the policy required. Once the Grants submitted the claim, Allied and Everest delayed payment and opened an investigation on these claims. If Allied and Everest had reasonably investigated these claims, it would have found they were covered by the policy.

20. In a March 29, 2018 letter, almost a year after he was rushed to the hospital, HPI informed the Grants that after review of the medical information submitted,

Everest and Allied were denying Plaintiffs' claim and had directed HPI to rescind the short term medical insurance coverage, making it null and void as of January 1, 2017.

21. HPI further stated in the letter that the policy had been rescinded based on a comparison of the application responses to information received during the processing of the medical claims, specifically, the response to question no. 4 of the Group Short Term Medical Plan Insurance Enrollment Form.

22. Everest claimed that the information provided by Mrs. Grant was a misrepresentation of facts in that Mrs. Grant had responded "No" to question no. 4 when it should have been "Yes." Everest stated that during the investigation, it was determined that Mr. Grant had previous treatment for his heart and as a result Everest was misled into approving coverage to the Grants.

23. HPI informed the Grants that had Mrs. Grant accurately responded to questions no. 4 the Short-Term Medical Policy would not have been approved.

24. On April 24, 2018, Mr. Grant sent an appeal letter to Everest requesting that it formally reinstate his coverage and pay the bills owed under the insurance policy. Mr. Grant stated that Everest had rescinded the policy based on one question (no. 4) off the initial application even though Everest's salesperson was the individual who walked them through the questions and interpreted question no. 4 as a two part question. Both parties interpreted the question as follows:

**PART ONE**

"Within the last 5 years has any applicant been diagnosed with, received treatment, abnormal test results, medication, consultation for, or had symptoms of: Insulin or medication dependent diabetes except gestational (diabetes does not apply to residents of DC), stroke, transient ischemic

attack (TIA), cancer or tumor except basal cell skin cancer, Crohn's disease, ulcerative colitis, rheumatoid arthritis, systemic lupus, chronic obstructive pulmonary disease (COPD), emphysema, cystic fibrosis, hepatitis C, multiple sclerosis, muscular dystrophy, alcohol or drug abuse, bipolar disorder or schizophrenia;

Mr. Grant stated the response to this portion of the question was "NO."

**PART TWO**

"hospitalization for mental disorder, an eating disorder; or any diseases or disorders of the following: liver, kidney, blood, pancreas, lung, brain, heart or circulatory including heart attack or catheterization?"

Mr. Grant stated the response to this portion of the question was also "NO."

25. Mr. Grant further informed Everest that they had answered the application questions truthfully and paid their premiums on time. The Grants demanded that Everest live up to its commitments as outlined in the terms of their agreement and pay the covered claims.

26. Mr. Grant did not receive any response to his appeal letter and began to reach out leaving multiple messages with Everest, Allied, and HPI requesting they call to discuss the rescission and his letter.

27. On July 12, 2018, Mr. Grant received an email from Eric Berg of Everest acknowledging his voicemails and appeal. Mr. Berg stated that Everest, HPI, and Allied had no record of having received the appeal letter and requested a courtesy copy of the letter.

28. Mr. Grant sent Berg the appeal letter with proof of delivery. On July 16, 2018, Berg informed Mr. Grant that the letter had been reviewed and Everest had determined

to uphold the rescission stating that the answer to question no. 4 should have been "Yes."

29. Mr. Grant responded to Berg and stated that he believed there was a flaw in the verbiage in the application in that it was confusing verbiage used to capture the most new client premium revenue but still give Everest the opportunity to deny large claims or rescind coverage.

30. Mr. Grant further stated that Everest's claim that they did not reasonably interpret question no. 4 was invalid and offered text readability consensus results to Everest. These assessments also included charts which show the average US grade level and the level needed to understand question no. 4. These results indicated that the education level required reading and understanding of the critical question, far exceeded the average education level in the US.

31. Mr. Grant stated that it was impossible to comprehend why any company would make such an important question so incredibly complex. He further informed Berg that his September and December surgeries could have easily waited until January giving him an opportunity to purchase different insurance had he known of Everest's unwillingness to honor its obligation to pay these claims.

32. On September 6, 2018, Mr. Grant sent Berg an email requesting a full copy of the policy and a copy of the audio file made during the sale of the insurance. At the time of the call, Plaintiffs were advised that the line was being recorded when Plaintiffs answered the Group Short Term Medical Plan Insurance Enrollment Form for eligibility to obtain short term medical insurance over the phone on December 15, 2016.

33. Berg responded the following day and provided a copy of the policy and told Plaintiffs that they did not have a copy of any recording of the call. On September 8,

2018, Mrs. Grant sent an additional email to Allied requesting a copy of the policy and a copy of the audio file.

34. On September 12, 2018, Allied responded and provided a copy of the policy listing the sales agent and instructed her to contact David Bromberg, who was the listed agent for the audio file recording.

35. To date, Plaintiffs have not been provided a copy of the audio file and have failed and refused to pay for Plaintiffs' claim.

### IV. Agency and Respondeat Superior

36. Pursuant to Section 4001.009 of the Texas Insurance Code, Everest is jointly and severally liable for HPI, Bromberg, and Allied's acts as agents in Everest's liabilities, duties, requirements, and penalties provided by certain laws.[1]

37. Specifically, HPI, Allied, and Bromberg are agents of Everest under Section 4001.051 of the Texas Insurance Code because they:

(a) solicit insurance on behalf of the insurer;

(b) receive or transmit other an application for insurance or an insurance policy to or from the insurer;

(c) advertise or otherwise gives notice that they will receive or transmit an application for insurance or an insurance policy;

(d) receive or transmit an insurance policy of the insurer;

---

[1] (1) Chapters 281, 402, 421-423, 441, 444, 461-463, 541-556, 558, 559, 703, 705, 821, 823-825, 827, 828, 844, 963, 1108, 1205-1208, 1211, 1213, 1214, 1352, 1353, 1357, 1358, 1360-1363, 1369, 1453-1455, 1503, 1550, 1801, 1803, 2151-2154, 2201-2203, 2205-2213, 3501, 3502, 4007, 4102, and 4201-4203; (2) Chapter 403, excluding Section 403.002; (3) Subchapter A, Chapter 491; (4) Subchapter C, Chapter 521; (5) Subchapter A, Chapter 557; (6) Subchapter B, Chapter 805; (7) Subchapters D, E, and F, Chapter 982; (8) Subchapter D, Chapter 1103; (9) Subchapters B, C, D, and E, Chapter 1204, excluding Sections 1204.153 and 1204.154; (10) Subchapter B, Chapter 1366; (11) Subchapters B, C, and D, Chapter 1367, excluding Section 1367.053(c); (12) Subchapters A, C, D, E, F, H, and I, Chapter 1451; (13) Subchapter B, Chapter 1452;(14) Sections 551.004, 841.303, 982.001, 982.002, 982.004, 982.052, 982.102, 982.103, 982.104, 982.106, 982.107, 982.108, 982.110, 982.111, 982.112, and 1802.001; and (15) Chapter 107, Occupations Code.

 (e) examine or inspect a risk;

 (f) receive, collect, or transmit an insurance premium;

 (g) take other action in the making or consummation of an insurance contract for or with the insurer; or

 (h) examine into, adjust, or aid in adjusting a loss for or on behalf of the Everest.

### V. Cause of Action for Breach of Contract Against Everest

38. According to the insurance policy that Plaintiffs purchased, Everest had the duty to pay Plaintiffs policy benefits for the medical claims covered by Plaintiffs' medical insurance plan. Stephen Grant suffered a medical problem that was covered by the medical plan.

39. Everest and its adjusters have breached this contractual obligation and the subject insurance policy by failing to pay Plaintiffs policy benefits for the cost for services provided.

40. Everest and its adjusters have also breached the contractual provisions on timely investigating, adjusting, and paying Plaintiffs' medical bills on the insurance claim. As a result of these breaches of contract, Plaintiffs have suffered the damages that are described in this complaint.

### VI. Violation of Chapter 705 of the Insurance Code

41. Mrs. Grant correctly answered question 4 of the insurance application, however, in the alternative, to the extent that they allege material misrepresentation during the application for the policy, Everest, Allied, HPI, and Bromberg are not entitled to rescind the policy based upon alleged material misrepresentation in the application.

42. First, in violation of Section 705.005 of the Texas Insurance Code, they did not gave notice that the defendant refused to be bound by the policy before the 91st day after the date the they discovered the falsity of the representation. Everest, and its

agents, HPI and Allied did not notify Plaintiff that Everest did not intend to be bound by the policy until March 29, 2018.

43. Second, any fraud in the application was committed by Bromberg, who is Everest's agent, not Mrs. Grant. In this respect, Everest's agent, Bromberg was on notice of the truth of the factual circumstances surrounding the answer to Question 4 at the time the alleged false representation was made on December 15, 2016. Bromberg filled out the application, thereby committing the fraud, if any.

## VII. Causes of Action for Violation of Chapter 542 of the Insurance Code Against Everest and Allied

44. Everest and its Allied's delay in the making of a claim decision and failure to pay Plaintiffs that is described in this complaint violates Chapter 542 of the Texas Insurance Code.

45. Within 15 days after the receipt of either actual or written notice of Plaintiffs' medical claim, Everest and Allied did not request from Plaintiffs any items, statements, and forms that it reasonably believed at that time would be required from Plaintiffs for its claim.

46. As a result, Everest and its adjusters have violated Chapter 542 by failing to accept or reject Plaintiffs' claim in writing within 36 days after receiving either actual or written notice of its claim.

47. Everest and its adjusters have also violated Section 542.058 by failing to properly pay Plaintiffs' claim within 75 days after it received either actual or written notice of the claim or within 60 days after any other applicable statutory period.

48. In the event it is determined that Everest owes Plaintiffs any additional monies, then Everest has automatically violated Chapter 542 of the Texas Insurance Code.

### VIII.  <u>**DTPA Causes of Action Against All Defendants**</u>

49. Plaintiffs incorporate all the allegations in this complaint for these causes of action against Defendants under the provisions of the DTPA. Plaintiffs have met all conditions precedent to bringing these causes of action against Defendants. Specifically, Defendants' violations of the DTPA include, without limitation, the following matters:

   A. By its acts, omissions, failures, and conduct that are described in this complaint, Everest and its agents have violated Sections 17.46(b)(5), (7), (12), and (20) of the DTPA. In this respect, Defendants' violations include, without limitation, (1) Everest and Allied's unreasonable delays in the investigation, adjustment and resolution of Plaintiffs' claim, (2) Everest and Allied's failure to properly investigate Plaintiffs' claim, and (3) Defendants failure to pay for the services provided to Mr. Grant on which Defendants' liability had become reasonably clear;

   B. As described in this complaint, Everest and Allied represented to Plaintiffs that the subject insurance policy and their adjusting and investigative services had characteristics or benefits that it did not have, which gives Plaintiffs the right to recover under Section 17.46(b)(5) of the DTPA;

   C. As described in this complaint, Bromberg and Everest represented to Plaintiffs that the subject insurance application and specifically Question 4 had characteristics or benefits that it did not have, which gives Plaintiffs the right to recover under Section 17.46(b)(5) of the DTPA;

   D. As described in this complaint, HPI represented to Plaintiffs that the insurance agent it referred Plaintiffs to, Bromberg, was of a particular standard, quality, or grade when he was of another in violation of Section 17.46(b)(7) of the DTPA;

   E. As described in this complaint, Everest, HPI, and Allied represented to Plaintiffs that the subject insurance policy and its adjusting and investigative services conferred or involved rights, remedies, or obligations that they did not have, such as the right to rescind the policy more than 91 days after Everest learned of alleged fraud in the insurance application which gives Plaintiffs the right to recover under Section 17.46 (b)(12) if the DTPA;

F.  By representing that Everest would pay to provide medical coverage and then not doing so, Everest has violated Sections 17.46(b)(S), (7), and (12) of the DTPA;

G.  Bromberg's actions, as described in this complaint, are unconscionable in that he took advantage of Plaintiffs' lack of knowledge, ability, and experience to a grossly unfair degree. His unconscionable conduct give Plaintiffs the right to relief under Section 17.SO(a)(3) of the DTPA; and

I.  Everest, Allied and Bromberg's conduct, acts, omissions, and failures, as described in this complaint, are unfair practices in the business of insurance in violation of Section 17.SO(a)(4) of the DTPA.

50. All of the above-described acts, omissions, and failures of Defendants are a producing cause of Plaintiffs' damages that are described in this complaint.

### IX.  Causes of Action for Unfair Insurance Practices Against Allied and Everest

51. Plaintiffs incorporate all the allegations in this complaint for these causes of action against Defendants Allied and Everest under the Texas Insurance Code. Plaintiffs have satisfied all conditions precedent to bringing these causes of action.

52. By their acts, omissions, failures, and conduct Allied and Everest have engaged in unfair and deceptive acts or practices in the business of insurance in violation of Chapter 541 of the Texas Insurance Code.

53. Such violations include, without limitation, all the conduct described in this complaint plus these Allied and Everest's failure to properly investigate Plaintiffs' medical claim.

54. They also include Allied and Everest's unreasonable delays in the investigation, adjustment, and resolution of Plaintiffs' medical claim and Everest's failure to pay for the medical bills on which its liability had become reasonably clear. In addition, Allied and Everest's failed to look for coverage and give Plaintiffs the benefit of

the doubt. Specifically, Allied and Everest are guilty of the following unfair insurance practices:

A. Engaging in false, misleading, and deceptive acts or practices in the business of insurance in this case;

B. Engaging in unfair claims settlement practices;

C. Misrepresenting to Plaintiffs pertinent facts or policy provisions relating to the coverage at issue;

D. Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiffs' claim on which Everest's liability has become reasonably clear;

E. Failing to affirm or deny coverage of Plaintiffs' claim within a reasonable time;

F. Refusing to properly pay Plaintiffs' claim without conducting a reasonable investigation with respect to the claim by conducting a sham investigation; and

G. Failing to provide promptly to a policyholder a reasonable explanation of the basis in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement.

55. Everest has also breached the Texas Insurance Code when it breached its duty of good faith and fair dealing. Defendants' conduct as described herein has resulted in Plaintiffs' damages that are described in this complaint.

### X. Cause of Action for Breach of Duty of Good Faith and Fair Dealing Against Everest

56. Plaintiffs incorporate all the allegations of the preceding paragraphs for this cause of action. By its acts, omissions, failures, and conduct, Everest has breached its common law duty of good faith and fair dealing by denying Plaintiffs' medical insurance claim without any reasonable basis and by failing to conduct a reasonable investigation to determine whether there was a reasonable basis for its denial.

57. Everest has also breached its duty by unreasonably delaying payment of Plaintiffs' medical claim and by failing to settle Plaintiffs' medical claim because Everest and its adjusters knew or should have known that it was reasonably clear that the claim was covered. This conduct of Everest and its adjusters are the proximate cause of Plaintiffs' damages.

### XI. Cause of Action for Negligence, Negligent Misrepresentation, and Breach of Fiduciary Duty against all Defendants

58. Plaintiffs incorporate all the allegations in this complaint for these causes of action against Defendants HPI and Bromberg for negligence, negligent misrepresentation, and breach of fiduciary duty. HPI and Bromberg did not exercise reasonable care or competence in obtaining the insurance and communicating information about the application process, Bromberg, and Everest's insurance policy to Plaintiffs. HPI and Bromberg's acts of negligence include, without limitation, their misrepresentations concerning the insurance policies sold to the Plaintiffs and failure to obtain insurance to cover Plaintiff's property as described herein.

59. HPI was also negligent in failing to either adequately supervise and train Bromberg, or to screen and verify that Bromberg was adequately trained or supervised to assist Plaintiffs in procuring and applying for insurance. If HPI had not referred Plaintiffs to Bromberg, but had referred Plaintiffs to a competent and capable agent, there would have been no alleged fraud in the application. Each and all of the foregoing acts, singularly or in combination, constitute negligence on the part of Defendants that has directly and proximately caused Plaintiff's damages, which damages are within the jurisdictional limits of this court.

60. HPI and Bromberg made misrepresentations to the Plaintiffs regarding the insurance policies sold to the Plaintiffs in the course of the Defendants' business.

Specifically, Defendants supplied false information or failed to provide adequate information to Plaintiff for the guidance of the Plaintiff relying on Bromberg's advice and in answering question 4 of the insurance application.

61. Bromberg also had the duty to "use reasonable diligence in attempting to place the requested insurance and to inform the client promptly if unable to do so to." *See May v. United Services Association of America,* 844 S.W.2d 666 (Tex. 1992). Bromberg breached this duty by failing use reasonable diligence to learn about Mr. Grant's health history once it was presented to him by Mrs. Grant and failing to accurately advise Mrs. Grant based upon that knowledge. Defendants HPI and Bromberg have has proximately caused Plaintiff's damages, which damages are within the jurisdictional limits of this court.

## XII. Waiver and Estoppel

62. Defendants have waived and are estopped from asserting any defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights or denial letters previously sent to Plaintiffs.

## XIII. Damages

63. The above described conduct of Defendants have caused Plaintiffs' damages, which include, without limitation, the unpaid cost to the medical providers for the services provided to Mr. Grant in his claims in an amount exceeding $914,912. Plaintiffs are also entitled to recover the unpaid amount plus an eighteen percent per annum interest on that amount and on all other untimely payments against Everest as damages under Section 542.060 of the Texas Insurance Code. All the damages described in this complaint are within the jurisdictional limits of the Court.

## XIV.  Additional Damages

64. Defendants Everest, Allied, HPI, and Bromberg have also "knowingly" and "intentionally" committed deceptive trade practices and unfair insurance practices as those terms are defined in the applicable statutes. As a result, Plaintiffs are entitled to additional damages under Section 17.50(b)(1) of the DTPA and Chapter 541 of the Texas Insurance Code.

## XV.  Exemplary Damages

65. Everest's breach of its duty of good faith and fair dealing owed to Plaintiffs was done intentionally and with "malice" and "gross negligence" as those terms are defined in Chapter 41 of the Texas Civil Practice and Remedies Code.

66. HPI and Bromberg's negligence was committed intentionally, with a conscious indifference to Plaintiffs' rights and welfare, and with "malice" as that term is defined in Chapter 41 of the Texas Civil Practice and Remedies Code.

67. These violations by Everest, HPI, and Bromberg are the type of conduct that the State of Texas protects its citizens against by the imposition of exemplary damages. Therefore, Plaintiffs seek the recovery of exemplary damages in an amount to be determined by the finder of fact that is sufficient to punish Everest for its wrongful conduct and to set an example to deter these Defendants and others similarly situated from committing similar acts in the future.

## XVI.  Attorney's Fees

68. As a result of Defendants' conduct that is described in this complaint, Plaintiffs have been forced to retain the undersigned attorneys to prosecute this action and has agreed to pay reasonable attorney's fees.

69. Plaintiffs are entitled to recover these attorney's fees under Chapter 38 of the Texas Civil Practices and Remedies Code; Chapters 541 and 542 of the Texas Insurance Code; and Section 17.50 of the DTPA.

70. WHEREFORE, PREMISES CONSIDERED, Plaintiffs request a trial by jury and also requests that Defendants be cited to appear and answer, and on final hearing, the court award Plaintiffs a judgment against Defendant for the following:

1. Actual damages, economic, additional, and exemplary damages in an amount within the jurisdictional limits of the court;
2. Reasonable attorney's fees through trial and on appeal;
3. Eighteen percent per annum interest on late or unpaid policy benefits pursuant to Chapter 542 of Texas Insurance Code.
4. Pre-judgment and post-judgment interest as provided by law;
5. Costs of court; and
6. Such other and further relief to which Plaintiffs may be justly entitled.

        Respectfully submitted,

        ***Loree & Lipscomb***
        The Terrace at Concord Park
        777 E. Sonterra Blvd, Suite 320
        San Antonio, Texas 78258
        Telephone: (210) 404-1320
        Facsimile:  (210) 404-1310

        By: */s/ Cassandra Pruski*
            Robert W. Loree
            State Bar No. 12579200
            rob@lhlawfirm.com
            Cassandra Pruski
            State Bar No. 24083690
            cassie@lhlawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that Plaintiffs have served a true and correct copy of the foregoing document on June 12, 2019 to all counsel of record through the Court's ECF filing system.

*/s/ Cassandra Pruski*
Cassandra Pruski
